LONG POND MUTUAL FIRE INSURANCE COMPANY *vs.* CHARLES HOUGHTON.
SAME *vs.* SAMUEL C. HUNT.

An assessment laid on all the members of a mutual fire insurance company, to pay liabilities for losses and expenses, part of which accrued before some of them became members, is void as to them, but valid as to the others.

The by-laws of a mutual fire insurance company provided that all persons obtaining insurance should pay a premium, and, in case of personal property, pay an equal amount as deposit money, and in case of real estate, give a deposit note of equal amount; and that "all premiums and deposits thus paid in" should be denominated the absolute funds of the company, and be applied, first, to the payment of expenses, secondly, of losses. *Held*, that this provision of the by-laws did not conflict with the Rev. Sts. c. 37, § 31; and that such a deposit note, expressly made subject to the by-laws, was part of the absolute funds of the corporation, and might be collected to pay losses and expenses which accrued before the maker became a member of the corporation.

ACTIONS OF CONTRACT by a mutual fire insurance company, to recover the amount of an assessment upon the defendants, and

7 *

of deposit notes signed by each of them contemporaneously with receiving a policy of insurance from the plaintiffs on real estate, and payable to the plaintiffs " in such portions and at such times as the directors may, agreeably to their by-laws, require." The cases were submitted to the decision of the court upon the following facts :

The plaintiffs were incorporated by *St.* 1848, *c.* 284, " with all the powers and privileges, and subject to all the duties, liabilities and restrictions, set forth in the thirty-seventh and forty-fourth chapters of the revised statutes." Those articles of their by-laws, which are material to these cases, are copied in the margin.*

---

* ART. 1. All persons, and all corporations, who shall, by themselves or their agents, be insured in this association, shall thereby become members of it, and shall be subject to such liabilities, and be entitled to such benefits as are expressed in these articles.

ART. 11. All persons, and all corporations, by themselves or their agents, shall pay to the president, upon execution of his, her or their policy or policies, and before delivery thereof, such premium as may be agreed on, and in case of insurance on personal property, the same amount as deposit money. But if the insurance be on real estate, in lieu of deposit money, they shall leave a deposit note, bearing interest, of the same amount with the premium. All premiums and deposits thus paid in, together with the interest accruing thereon, and forfeitures, shall be denominated the absolute funds of the company. To place the property insured upon a solid foundation, each member shall be held to pay, by way of assessment, in case losses should happen so as to consume the absolute fund, at the discretion of the president and directors, during the term of his policy, a sum not exceeding two dollars for each dollar paid as premium and deposit.

ART. 24. The absolute fund of the company shall be appropriated to the payment, 1st, of expenses ; 2d, of losses by fire ; 3d, of returns of premiums and deposits, and of dividends on policies expired.

ART. 25. In case losses should happen so as to absorb the whole of the fund arising from the policies, the president and directors may, if they deem it expedient, within thirty days, proceed to assess on each member a sum not exceeding double the amount paid by him as premium and deposit, and collect the same without delay ; and in thirty days after due notice of such assessment has been given, they shall proceed in due form of law against each delinquent, and thereby the president and directors shall be completely exonerated. In case of neglect to pay said assessment, such delinquent policy or policies shall cease and determine, until payment is made with interest, and such reasons given for the delay as shall be satisfactory to the president and directors.

On the 17th of March 1853, the directors passed the following vote : " Voted, that whereas members of the corporation have just claims upon the corporation, founded upon policies issued by it, exceeding the amount of its existing funds and deposit notes, therefore all the corporation deposit notes be collected; and in addition thereto, that an assessment be laid, and the same is hereby laid on each member of the corporation, of a sum equal to an hundred and thirty per centum of the amount of his premium and deposit notes paid and made on his existing policy, and that the same be notified to the members, and collected in accordance with the 25th article of the by-laws."

The amount of funds of the company, consisting of premium and deposit notes, then amounted to about one fourth of the amount of their liabilities. Pursuant to this vote, the defendants were assessed for their proportion of all the outstanding claims against the corporation, including all liabilities for expenses of the company, and for losses, at various times from the 8th of August 1850 to the date of the assessment, some thousands of dollars of which accrued before Houghton's insurance was effected; but all after Hunt received his policy. In making the assessment, no regard was had to the dates or duration of the respective policies ; and no distinction made between policies on real estate and on personal property, or between deposit notes and deposits of money.

*J. P. Healy*, for the plaintiffs. 1. An assessment laid by a mutual fire insurance company must be laid on all who are members at the time of laying the assessment. By becoming members of the corporation, they become subject to all its liabilities. It would be impossible, in practice, to lay an assessment for each loss or item of expense upon those only who were members when it accrued ; for many of them, having since ceased to be members, and settled with the corporation at the expiration of their policies, could not now be charged. Rev. Sts. *c.* 37, §§ 30, 31, 38. Angell on Ins. § 422. *Hyde* v. *Lynde*, 4 Comst. 387. Both defendants are therefore liable for this assessment.

But if the assessment is invalid as to Houghton, it is valid

as to Hunt, who became a member of the corporation before any of the losses or expenses accrued to meet which the assessment was laid.

2. The amount of the deposit notes, being, by virtue of Rev. Sts. c. 37, § 31, and the defendants' by-laws, part of the absolute funds of the company, may be recovered, without regard to the validity of the assessment.

*W. R. P. Washburn & H. C. Hutchins*, for the defendants. 1. " The members" upon whom, by Rev. Sts. c. 37, § 31, every claim on the corporation shall be "forthwith" assessed by the directors, are those who are members when the liability of the corporation accrues. Otherwise, as no person is a member except while he is insured, the assessment might fall on those who were not members when the liability accrued; or a failure of the directors to perform their duty of laying an assessment forthwith might make a difference in the persons to be assessed, and consequently in the security of creditors of the corporation. Rev. Sts. c. 37, §§ 30, 31, 33. *Herkimer County Mutual Ins. Co.* v. *Fuller*, 14 Barb. 373. *Wilson* v. *Trumbull Mutual Fire Ins. Co.* 19 Penn. State R. 372. *Coston* v. *Alleghany County Mutual Ins. Co.* 1 Barr, 322. *Ohio Mutual Ins. Co.* v. *Marietta Woollen Factory*, 3 Ohio State R. 348.

The assessment, being thus illegal as to Houghton, who was not a member of the corporation when a large amount of the losses and expenses accrued, is wholly void.

2. The Rev. Sts. c. 37, § 31, having provided that "if any member shall have a just claim on the corporation, founded on a policy issued by them, exceeding the amount of their then existing funds, exclusive of deposit notes given by the members, the directors shall forthwith assess," that method must be pursued, and, until it is exhausted, any other method is illegal. The "absolute fund," in the twenty-fifth by-law, must be construed to mean premiums and deposits of money only, and not deposit notes; otherwise, the by-law conflicts with this provision of the statute, that an assessment shall be made when the claims on policies exceed the amount of "then existing funds, exclusive of deposit notes." These notes are not promises to

pay absolutely, but " in such portions and at such times as the directors may, agreeably to their by-laws, require," that is, legally require. And there is no provision whatever in the by-laws for the collection of the deposit notes.

These cases were decided at March term 1857.

DEWEY, J. In the cases heretofore decided by this court in actions to recover assessments in mutual fire insurance companies, some principles have been settled which may aid us in the present cases.

In *Atlantic Mutual Fire Ins. Co.* v. *Fitzpatrick*, 2 Gray, 279, it was held that, to maintain such an action, the burden was upon the plaintiffs to establish the fact of a legal assessment.

In *Marblehead Mutual Fire Ins. Co.* v. *Hayward*, 3 Gray, 208, the plaintiffs failed to maintain their action, because it appeared that, in making their assessment, they had designedly omitted various members of the company liable to be taxed, and thus increased the *pro rata* sum to be assessed upon the defendant.

In *New England Mutual Fire Ins. Co.* v. *Belknap*, 9 Cush. 140, the defence, that the assessment was not made literally *forthwith* after the loss, was not allowed to prevail; the court deeming it sufficient that there was an approximation to the time of the loss, and an assessment upon all liable at the time of the loss, as near as was practicable; and that for every loss, however small, the company could not be required to make a separate assessment upon their members. But in that case the loss did in fact occur after the date of the defendant's policy, and the assessments were made upon the deposit notes liable at the time of the loss.

In *Marblehead Mutual Fire Ins. Co.* v. *Underwood*, 3 Gray, 210, it was held that a reasonable time might properly be taken after the loss to make the assessment, and that small and unintentional errors in the list of assessments would not defeat the assessment; nor would the fact that some of the members, whose deposit notes were assessed, had paid smaller cash premiums and given larger notes than the defendant, render the assessment illegal, it not appearing that he had suffered thereby. It

appeared in that case, as in the one last cited, that the assess-ments were upon the notes existing at the time of the loss, and upon the principle of including all such notes.    In those two cases the plaintiffs recovered.

Giving full effect, in the present case, to the decisions of this court most favorable to maintaining an action to recover an assessment, yet the action against Houghton must fail as to that claim.    Upon the principle of an assessment under the pro-visions of Rev. Sts. *c.* 37, § 31, this assessment was clearly bad. It failed entirely to comply with the rule, that assessments are to be substantially levied upon those who are members at the time of the loss.    Here this principle was wholly disregarded, and we think that the assessment was thereby rendered invalid, and no action will lie to recover it.

The case of the other defendant, Hunt, stands in a different position, in this respect.    Having become a member before the 8th of August 1850, he might properly be assessed for all losses and expenses after that date, and before the assessment was made.    It is no objection, open to him, to the validity of the assessment, that individuals who had more recently become members were also assessed for these losses, for some of which they were not liable.    He is not injured thereby, as his assessment is not increased, but diminished.    He is therefore liable for the assessment.

2.  The further question is upon the right of the plaintiffs to recover upon the deposit notes, treating them as notes which the directors have ordered to be collected as necessary to pay existing debts, arising from losses by fire and expenses of con-ducting the business of the company.

This involves the inquiry as to the precise character of these notes, and whether any greater liabilities arose thereon than upon the deposit notes usually given by members of mutual fire insurance companies, and which have been the subject of assessment in the cases usually before this court.    Treating them as of that character, and as the basis of an assessment, rather than an absolute promise to be enforced independently of an assessment, they could only be collected by means of such

assessment; and, for the reasons already stated, this assessment was invalid as to Houghton, and of course could not be recovered as against him.

The notes are payable " in such portions and at such times as the directors may, agreeably to their by-laws, require." This form does not differ materially from those ordinarily taken by mutual insurance companies.

The ground for taking this case out of the usual rules applicable to deposit notes is that arising from the peculiar provisions of the by-laws of the company under which these notes were given.

As already suggested, the form of these notes does not necessarily indicate that they are absolute funds, and to be paid irrespectively of any general assessment for losses; but is consistent with the hypothesis that they are absolute funds, and may be collected at any time under the direction of the directors of the company, and, when thus collected, applied to the discharge of any debts and liabilities of the company.

In the opinion of the court, a proper construction of the by-laws requires us to give to these notes the character of absolute funds. All premiums and deposits paid in are denominated the absolute funds of the company. The assessments are, by art. 25, to be made in case the whole of the fund arising from the policies is absorbed by the payment of losses. The fund arising from policies clearly includes the premiums and deposits. The deposits, in case of personal estate insured, are paid in cash, and, in case of insurance on real estate, by notes like those now in suit. Irrespectively of the provisions of the revised statutes, it would seem very clear that these notes were subject to collection at any time, at the discretion of the directors, for the purpose of discharging the debts or liabilities of the company; and no necessity existed for enforcing them by any general assessment under the rules and requirements prescribed for assessments.

The further inquiry is, whether, supposing such to be the liability under the by-laws, such by-laws are inconsistent with tne provisions of the charter, and of the general laws regulating

mutual insurance companies? The act incorporating this company, *St.* 1848, *c.* 284, is one of those brief acts of incorporation that merely names certain individuals and their associates, giving to them the powers and privileges, and making them subject to the duties, liabilities and restrictions of *cc.* 37, 44 of Rev. Sts. Of *c.* 44, the only section material to the present question is § 1, authorizing the making of " by-laws and regulations consistent with the laws of the Commonwealth." The provision of *c.* 37, § 31, is this: " If any member shall have a just claim on the corporation, founded on a policy issued by them, exceeding the amount of their then existing funds, exclusive of deposit notes given by the members, the directors shall forthwith assess such sum as may be necessary to pay the same upon the members, in proportion to the amount of their premiums and deposits."

The point to be considered is, whether a by-law, declaring deposit notes taken by the company to be a part of the absolute funds of the company, collectable at the discretion of the directors, and applicable to the payment of any debts and liabilities of the company, conflicts with the provision contained in the section of the statute just quoted? If this were to be taken to be a limitation on the powers of the company, and one excluding any other mode of holding or collecting notes to them, it might seem to follow that such notes were to be treated as the basis of proportional assessments, rather than as absolute funds to be collected, irrespectively of the statute. This has certainly been the more usual course of raising money to discharge the liabilities of mutual fire insurance companies. But there is nothing in the statute, limiting insurance companies to this course of proceeding. The leading purpose of this section of the statute clearly was, to make a provision for the security of those who had claims for losses on their policies, and to secure the prompt payment of the same. The statute enacts, that the directors shall forthwith assess such sum as may be necessary to pay such losses ; and, upon their neglect to make such assessment, the directors are made personally liable upon the judgments recovered against the company for losses.

It is without doubt competent for mutual fire insurance companies to make by-laws and regulations as to the rates of premium, and whether the same shall be paid wholly in cash or partly in notes of hand, and to provide that, at the time of receiving a policy, the same amount as is paid in cash for the premium shall be secured by a note, and that both sums shall be applied generally in discharge of any debts and liabilities of the company. This would not be in conflict with the provisions contained in § 31. Its only effect would be to enable the directors to collect such notes as they would any other of their funds or deposits, and before making any assessment under the statute provisions. If these funds were insufficient to meet the liabilities of the company for losses, the directors would be required, under the statute, to make an assessment.

We are of opinion that, under the by-laws of this company, the deposit notes are made a part of the absolute funds of the company, and, as such, may be collected by their order, and applied to the discharge of any debts or liabilities of the company, and that a by-law to that effect does not conflict with § 31 of c. 37 of the Rev. Sts. The result is therefore that an action for the recovery of the note may be sustained, and to this extent judgment is to be entered for the plaintiffs, in each case